## SUPREME COURT.

REUBEN R. THOMPSON, respondent agt. WILLIAM MENCK, appellant.

Although, on appeal, the court will not disturb the finding of a jury or a referee on a question of *fact* where there is ordinarily fair evidence to support it, yet whenever such finding is *clearly against the body of the evidence,* although there may be *some* evidence to support it, a new trial will be granted.

*Albany General Term, December,* 1859.

*Present,* W. B. WRIGHT, GOULD and HOGEBOOM, *Justices.*

THIS action was commenced in July, 1856. The summons and complaint were served July 1st, 1856. An answer was served July 19th, 1856. An amended answer was served August 7th, 1856. A reply was served August 25th, 1856. The complaint is for the balance of an account for goods, wares and merchandize sold and delivered by the plaintiff to the defendant, and demands judgment for $61.61, and interest from May 7th, 1856.

The amended answer denies the allegations in the complaint, and sets up new matter by way of counter-claim. The answer alleges that on the 9th of May, 1856, the plaintiff, at the city of New York, sold to the defendant certain goods which he represented he had shipped at Albany on board of a barge that was then on its passage down the river; and which goods he also represented to weigh sixty-one tons and 1731 pounds, and to be in good order; and which he agreed to deliver to the defendant at Fifty-fifth street, North river, in the city of New York, for the sum of $961.61 : That relying upon such representations and agreements, the appellant purchased said goods, and then and there paid on account thereof $900 : That the plaintiff never did deliver the said goods, wares and merchandize : That said barge, on board which said goods had been shipped, was not then on its passage down the river, but had

then arrived at New York, and sunk in the river with said goods on board, as the plaintiff well knew : That defendant paid for raising said barge and discharging said goods $133.99 : That said goods were not in good order, but were wet and dirty, and damaged thereby to the sum of $136.50 : That said goods did not weigh sixty-one tons and 1731 pounds, but were short seven tons and 1746 pounds, amounting to $104.25 ; for which sum, amounting to $374. 74, less $61.61, the respondent claims judgment.

The reply takes issue on various matters set up in said answers, but does not deny or controvert the allegation that the barge on board which said goods were shipped, had on the morning of May 9th, 1856, sunk in the river, or that said goods were then short seven tons, 1746 pounds.

The action was referred by an order of the court, dated November 12th, 1856, to William A. Young, Esq., sole referee. Said referee, on a trial before him, found for the plaintiff, and judgment was entered on his report, on the 30th July, 1857.

On an appeal from said judgment, the general term, by an order entered May 15th, 1858, reversed said judgment.

Said action was, by an order of the special term, entered June 29th, 1858, referred to George Downing, Esq., sole referee.

The referee specified the following facts as found by him : In 1856, the defendant was a manufacturer of, and a dealer in animal charcoal, in the city of New York. The plaintiff was at the same time a dealer in bones, and also in fine black, or animal charcoal, in the city of Albany. In the latter part of March, 1856, while the river was closed with ice, the defendant called upon the plaintiff at Albany, and negotiated with him for the purchase of such bones and fine black as he might have on the opening of navigation, and agreed upon the price as follows, viz : $13 per ton for refuse bones, $36 per ton for leg bones, $20 per ton for fine black, and twenty-five cents for packages. The plaintiff

had ten or fifteen tons of bones then on hand at his factory, and was receiving about ten tons per week. The defendant saw the bones then on hand ; they were free from coal ashes, iron, lime and clinker. The goods were to be delivered at the plaintiff's dock, in the city of Albany, to be paid for in cash on delivery. At the time of such purchase defendant informed plaintiff that Mr. C. N. Warner would ship the bones and fine black for defendant, and that plaintiff should deliver the bones, &c. to said Mr. Warner. That subsequently, about the 16th day of April, 1856, the defendant wrote to the plaintiff a letter directing him to deliver the bones and fine black to C. N. Warner. That a day or two before the delivery hereinafter mentioned, said Mr. Warner called at plaintiff's warehouse, and directed the foreman of the plaintiff to tell the plaintiff that captain Casey would be up in a day or two, and that plaintiff must put the bones and fine black on board Casey's barge. That Mr. Warner gave plaintiff, in person, the same directions. That according to such directions of Mr. Warner, the plaintiff delivered on board the said barge at his dock in the city of Albany, according to such directions, 50 tons and 1380 pounds rough bones, 3 tons and 1849 pounds shin-bones, 66 barrels fine black, 7 tons and 502 pounds, and 66 packages. That the same was correctly weighed, and delivered in good order, and free from coal ashes and clinkers. That said Mr. Warner was present during the delivery and weighing, off and on. The said bones and fine black, and packages, at the prices agreed upon, amounted to $961.61. That it was no part of the bargain that the bones were to be re-weighed at New York. That after the bones and fine black were delivered, as aforesaid, the barge was sunk at New York with the bones and fine black on board. That after such delivery the defendant paid the plaintiff $900 on account of the bones and fine black so delivered. That a large quantity of the refuse bones was lost overboard. at the sinking of the barge, that was never reco-

vered.   That the defendant caused, some days after the
sinking of the barge, the refuse bones to be weighed at
New York, and that there were not as many recovered as
were delivered.   That defendant took the said bones and
fine black from the barge.   That while the said bones were
being removed from the barge, they lay open and exposed
on the pier and dock, unwatched.

The referee's conclusions of law were : That C. N. War-
ner was the authorized agent of the defendant to receive
the goods which had been the subject of the bargain be-
tween plaintiff and defendant.   That the defendant's direc-
tion to put the goods aboard Warner's barge was complied
with by the delivery of the same on board Casey's barge,
according to the directions of Warner.   That upon the
delivery of the goods on board Casey's barge, in pursuance
of said directions, a valid contract of sale was consumma-
ted, upon the terms and at the prices previously agreed
upon ; and the property of the goods and possession of the
same became thereby vested in the defendant.   That the
goods, as soon as delivered on board of Casey's barge, were
at the defendant's sole risk.   That the defendant became
liable to pay the prices agreed upon, as soon as the goods
were delivered on board Casey's barge.   That the defend-
ant is not entitled to any deductions from such agreed prices
by reason of the sinking of the barge, or of the injuries, or
loss to the goods which resulted therefrom.   That the
plaintiff in this action is entitled to recover of the defend-
ant herein, sixty-one dollars and sixty-one cents, with inte-
rest from May 7th, 1856, besides costs.   Either party is to
be at liberty to turn this case into a bill of exceptions, on
the decision of the general term.

F. W. BURKE, *for appellant.*
JAMES B. SANDERS, *for respondent.*

Thompson agt. Menck.

By the court, GOULD, Justice. It is certainly true, that upon a finding of *fact* by a referee, as upon a similar finding by a jury, this court, on appeal, does not disturb his finding where there is ordinarily fair evidence to support it. But it is also true, that we set aside the finding of a jury, or the report of a referee, when either is *clearly against* the body of the evidence, although there may be *some* evidence to support it. And in this case, it seems to me almost impossible to say, from the testimony of the *plaintiff himself*, that there was *any such* contract as he asserted at first, and as the referee' has found. In March, before the river was open—when the property was not in view and not even in the *plaintiff's possession*—the conversation amounts to *no legal contract.* When the river was open, the utmost extent of plaintiff's right to *deliver*, was to deliver *to Warner.* In order to avoid this, and to make a delivery *to Casey* bind the defendant, he introduces a telegram (which he authorized Casey to send *in his*, plaintiff's, *name*) that *Warner's* barge was ready to take the bones, and receives a reply to *deliver on board Warner's barge.* This the plaintiff *did not do.* He claims, indeed, that he delivered by *Warner's direction*, and *under* Warner's supervision, and almost (but *not quite*) *to* Warner. Warner's *authority* to do anything but *receive* the bones *himself*, was *to be proved* by plaintiff. So far from its being proved at all, it is *expressly denied* by Warner, who *must know;* and there is absolutely *no* proof tending to show any such authority. A deceptive telegram furnishes no foundation for such power.

Further, the existence of a contract to make final and binding a delivery (even to Warner) on the dock at Albany, though sworn to by the plaintiff in terms, and probably according to *his* understanding of what *makes* a contract, is strangely and fatally inconsistent with his sending or delivering (and for this point it is quite immaterial which) the shipping statement, Exhibit C., saying "*When you weigh them*, if they overrun you will not be sorry, and if they fall

short a few pounds, *I think I can make it up."* Can this, by any possibility, mean otherwise than that the delivery was *not* binding and complete until the defendant weighed them at New York? Such seems to me the necessary construction, without the defendant's direct testimony that such was the agreement. If it were so, it puts an end to all chance for the plaintiff to recover in this case; since *then*, the payment of $900 made in New York, was made on or procured by a statement deliberately and intentionally false.

Aside from this, there could not easily be a delivery *to Warner* without *Warner's knowing something of it.* And that *he* knew nothing of any such delivery is fully proved, notwithstanding the plaintiff's attempt to say he did deliver to Warner.

The conversation of March being, *at that time,* not a legal contract, within the statute of frauds, *it* never could become such. The utmost that it could avail would be, that a subsequent full and accepted delivery might have been so made, as necessarily to refer to that conversation for its conditions and price; and then the law might say that the accepting of delivery made those conditions and price part of a binding contract, to be construed as if made at the time of delivery. But all the elements of a binding contract seem to be wanting in this case.

Owing to the leading idea on which the referee tried this case, he made, as I think, some erroneous decisions as to the admission and rejection of evidence, which must of themselves be ground for a new trial, even were my prior positions not sound. At folio 17, the witness was not allowed to answer the question, " did you deliver these bones to captain Casey?" though he had, on direct examination, testified in the same terms as to delivery to Warner; and this question was on cross-examination. Nor does the subsequent question, as he answered it, do fully away with the exception. Also, at folio 24, the question as to delivery,

(Exhibit C.,) was a proper question; it was on a cross-examination, and going both to his accuracy, and to the *effect* of the paper in showing how he must have understood the contract; as, if its delivery accompanied his false representations as to the arrival of the bones, it would tend very strongly to show that he *then* understood that the bones must be weighed in New York, before acceptance, and that up to that time there was no complete contract.

On the whole, it seems to me the judgment on the report must be reversed. A new trial of course is to be ordered.